UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.: 3:03cr264(AHN) |
| V. | : | |
| JORGE ORLANDO ARDILA | : | October 24 2005 |

### MEMORANDUM IN AID OF SENTENCING

The defendant, Jorge Orlando Ardilla, submits this memorandum as an aid to the Court in his sentencing. On December 14, 2005, Mr. Ardilla was convicted by a jury of Conspiracy to possess with intent to distribute more than five kilos of cocaine, in violation of 21 USC §§846 and 841 (a)(1) and (b)(1)(C), and Conspiracy to possess with intent to distribute more than one kilogram or more of heroin, in violation of 21 USC §846and 841 (a)(1), and three counts of possession with intent to distribute and distribution of heroin in violation of 21 U.S.C 841.

II    APPLICATION OF A NON-GUIDELINE SENTENCE

First, Mr. Ardilla went to trial and was convicted by a jury, however, Mr. Ardilla maintains his innocence at all times and in reference to any argument made in this memorandum by the undersigned.

The United States Sentencing Guidelines operate in the context of section 3553 of Title 18 of the United States Code. Section 3553(a) provides that the court "shall impose a sentence sufficient, but not greater then necessary...

      A.      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      B.      to afford adequate deterrence to criminal conduct;

      C.      to protect the public from further crimes of the defendant; and,

      D.      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner", 18 U.S.C. section 3553(a).

The sentencing court "has an independent power and responsibility to impose the proper sentence" under this statutory scheme. United States v. Pena, 930 F.2d 1486, 1495-96 (10th Cir. 1991); United States v. Agu, 763 F.Supp. 703, 704 (E.D.N.Y. 1991; United States v. Swapp, 719 F.Supp. 1015, 1025 (D. Utah 1989). Indeed, because "the prosecutor has tremendous discretion to decide whom to indict and what crimes to indict...the essence of our system of separated powers is that the judiciary have some discretion to counterbalance the prosecutor's awesome power." United States v. Jackson, 756 F. Supp 23, 27 (D.D.C. 1991).

The decision in United States v. Fanfan,. 543 U.S.___ (2005) at 2, make the Sentencing guidelines non-mandatory and "effectively advisory." Id. In fact the court in Fanfan directs that the lower courts "to consider guideline ranges … but it permits the court to tailor the sentence in light of other statutory concerns as well." Id. The other statutory concerns are delineated in 18 U.S.C. 3553(a) (1) as the nature and circumstance of the offense and the history and circumstance of the defendant. Id. Further by excising the mandatory application of the guideline as stated in 18 U.S.C. 3553(b)(1), the remaining statutory provision regarding the imposition of a sentence is § 3553 (a)(1),

which provides very broad criteria for courts to consider in imposing sentence. Accordingly, the sentence guidelines must be considered, however, so must the provisions of § 3553(a). U.S. v. Fanfan at 2.

It is Mr. Ardilla's position that the sentencing guidelines are now one of many factors a court may consider in sentencing a defendant. While it is true that courts must consider the guidelines, there is no mandate that they must be presumed reasonable, or for that matter, followed at all. A court may consider the guidelines and conclude that their application to a particular defendant would result in an inappropriate sentence for a defendant and sentence the defendant to a sentence the court deems fit. This court's decision would be reviewed for reasonableness which is a very deferential standard of review.

Mr. Ardilla has been convicted of very serious crimes with a guideline range of up to life in prison. He is asking this Court to consider the following arguments in support of a reasonable non-guideline sentence which reflects the fact of his conviction but also considers mitigating factors which militate toward a sentence of incarceration which is not a life sentence. Initially, Mr. Ardilla seeks mercy from this Court; he is a fifty-seven year old man who does not want to die in prison. While age is not ordinarily a ground for a departure under the guidelines it may be in this case due to the length of the prison sentence he faces and his age at the time of sentencing. U.S.S.G 5H1.1. According to the psychological examination performed on Mr. Ardilla at the Butner Correctional facility he suffers from Type two diabetes. See Psych report pg. 6. This is a degenerative disease which will get significantly worse as Mr. Ardilla ages. In addition, due to his age Mr. Ardilla is likely to suffer an extraordinarily tougher time in prison than

a younger man. U.S.S.G. 5H1.4.  Prison is a very violent place and a man of Mr. Ardilla's age can not defend himself sufficiently enough to ward off the predators who will be incarcerated with him. (Mr. Ardilla has also had a hip replacement which further comprises his physical condition.)  His physical safety is a serious concern for a man his age and this concern will only magnify as he ages in prison.  Finally, while Mr. Ardilla may not be suffering from a mental illness he does have cognitive problems which cannot be ignored.  Psych report pg 16.  Mr. Ardilla has reported to the undersigned, the probation officer Mr. Lopez, and the examiners at Butner that he hears voices, ie. God talking to him.  While the psychological report does not find any mental illness, the report does not suggest he is fabricating these voices.  In addition, the psychological report states he will need to learn compensatory strategies to deal with his deficits and states that this help could be provided by a mental health specialist.  Psych. Report at 16. Finally, while education is not ordinarily a ground for departure, Mr. Ardilla's education or lack of education is extraordinary in that he left school when he was eight or nine years old. U.S.S.G. 5H1.2.  While none of the above condition by themselves may be a ground for departure, collectively they rise to a degree that has not been taken into consideration by the sentencing commission in drafting the guidelines.  U.S.S.G. 5k2.0. Mr. Ardilla is asking this Court to grant an appropriate departure from the guidelines when fashioning the appropriate sentence for him.

If the above conditions suffered by Mr. Ardilla are insufficient for this Court to consider a departure from the guideline range, Mr. Ardilla respectfully requests the honorable Court to consider a reasonable non-guideline sentence.  Fanfan at 2.  In addition to the previously stated factors, Mr. Ardilla asks this Court to consider the

improvished conditions under which Mr. Ardilla was raised as a child. The excellent PSR prepared by Mr. Lopez accurately describes the severe hardship Mr. Ardilla suffered as a child. Both of Mr. Ardilla's parents were alcoholics which created extreme deprivation for Mr. Ardilla and his siblings. Keep in mind that Mr. Ardilla shared a three room home with an outhouse for human waste and outdoor plumbing and cooking facilities for drinking water, bathing and preparing meals. In addition this three room home had a dirt floor and was shared by sixteen people in his extended family. What is most important for the Court to consider about these condition is what is the effect the living conditions had on Mr. Ardilla as a child and how they affected his decision making ability as an adult? Mr. Ardilla revealed some of the long lasting emotional effects of these horrific living conditions when he broke down and cried when he explained that sometimes he and his siblings only had chicken heads and chicken feet to eat as a child. He refused to get further into the conditions of his youth as they were too painful for him to recall. PSR at 11.

There are a couple of final points which are important for the Court's consideration. Mr. Ardilla's wife suffers from mental illness. During the undersigned representation of Mr. Ardilla prior to trial, his wife was hospitalized several times on the mental health ward of St. Vincent's Hospital. She currently is doing well, however she is taking very powerful anti-psychotic medication and anti-depressants. What is important about this is that Mr. Ardilla stayed with his wife even though she suffers from this condition. He also helped raise her children and provided support to these children when she was not capable of providing any support. Lastly, it is important to note that Mr.

Ardilla is a devout Roman Catholic; he attends church everyday and he wants this Court to know that he has a deep personal connection with god.[1]

III    CONCLUSION

In conclusion, again Mr. Ardilla is seeking mercy from the Court. Mr. Ardilla requests the Honorable Court to impose a reasonable term of imprisonment that is appropriate for his conduct as reflected in the jury's verdict, as well as gives him the possibility of living long enough so that he does not have to die in prison. There are many facts and circumstances which make up ones life; it need not be seen as all bad and in Mr. Ardilla's life there has indeed been a lot of good too.

THE DEFENDANT
JORGE ORLANDO ARDILLA

_____
Francis L. O'Reilly
87 Ruane Street
Fairfield, CT 06430
203-319-0707
Fed. Bar No.: 17505

---

[1] During the investigation of this matter the agents involved observed Mr. Ardilla attending mass almost everyday.

**CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage paid, this date to the following:

Stephen Reynolds, Esq., AUSA
Alex Hernandez, Esq., AUSA
915 Lafayette Blvd.
Bridgeport, CT 06601

Ray Lopez
Senior United States Probation Officer
915 Lafayette Blvd.
Bridgeport, Ct 06601

_____
Francis L. O'Reilly