UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No.: 3:03CR264(AHN) |
| | : | |
| v. | : | |
| | : | |
| JORGE ORLANDO ARDILA | : | October 25, 2005 |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

This memorandum is submitted in response to the defendant's sentencing memorandum dated October 23, 2005, and received by the undersigned on October 24, 2005.

The government has reviewed the presentence investigation report ("PSR") and has no objections to the facts set forth therein, nor to the manner in which the Guidelines were calculated. By this memorandum, however, the United States reserves its right to make such further arguments in support of the Guidelines term of lifetime imprisonment, and to respond to the defendant's sentencing memorandum. In addition, the government wishes to bring to the attention of the Court, counsel and the probation office that the defendant may be eligible for an additional two level upward adjustment for obstruction of justice.[1]

### *The Guidelines Should Be Carefully Considered at the Time of Sentencing*

The substance of the defendant's sentencing memorandum is that the district court should disregard the Guidelines imprisonment range as calculated by the PSR. The defendant, however, is asking the sentencing court to misapply recent case law from the United States Supreme Court and the Court of Appeals.

---

[1] On October 25, 2005, shortly before the filing of this memorandum, undersigned counsel received via fax an additional submission from counsel for the defendant raising objections to the two-level enhancement in PSR ¶32, pursuant to U.S.S.G. §§ 1B1.3(b)(1)(B) and 2D1.1(b)(1); as well as to the four-level enhancement recommended in PSR ¶33, pursuant to U.S.S.G. §3B1.1(a) for the defendant's being a leader or organizer of the criminal activity involved. The government reserves the right to respond to these arguments at the sentencing.

In *United States v. Booker*, 125 S. Ct. 738, 2005 WL 50108 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." *Booker*, 2005 WL 50108, at *16. This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to appellate review for "reasonableness." *Id.* at *24.

The Court of Appeals for the Second Circuit has summarized the impact of *Booker* as follows:

> First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). *Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range,* or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. *Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.* Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

*United States v. Crosby*, No. 03-1675, slip op. at 24-25 (2d Cir. Feb. 2, 2005) (emphasis added). When imposing sentence, a district court must be mindful that "*Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *Id.* at 25. Both the Supreme Court and the Court

of Appeals expect "sentencing judges faithfully to discharge their statutory obligation to

'consider' the Guidelines and all of the other factors listed in section 3553(a), . . . and that the

resulting sentences will continue to substantially reduce unwarranted disparities while now

achieving somewhat more individualized justice."  *Id.*

Based upon the foregoing, the government respectfully urges the sentencing court to

carefully consider the Guidelines when imposing sentence, rather than disregarding them in favor

of a non Guidelines sentence as urged by the defendant.  Moreover, as set forth below, in this

particular case the Guidelines as calculated may seriously under represent the true extent of the

defendant's criminal involvement.

### The Defendant Obstructed Justice

Guidelines Section 3C1.1 provides in relevant part that,

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

As the Court recalls, shortly before the trial began, the defendant claimed to suffer from

mental health issues, manifested in the form of memory deficits and his repeatedly hearing

voices.  Based upon these claimed deficiencies, the defendant stated that he would be unable

meaningfully to assist his attorney in the conduct of his defense and that only a day or so before

the commencement of evidence he had started to recall certain things that, in his view, might

assist in his defense.  As a consequence, he requested that the district court delay the

commencement of trial.  The district court declined to do so.  During the trial the defendant

3

demonstrated his ability to effectively assist in his own defense by interjecting his own objections to evidence and regularly consulting with counsel. In short, his behavior during the trial belied his pre-trial claim.

After the defendant was found guilty and before sentencing, however, he renewed these claims and, accordingly, he was referred to the Federal Penitentiary at Butner for a psychiatric examination. This was based on, among other things, the defendant reiterating his claim that he was constantly hearing voices:

> [W]hen asked if he had ever heard voices, he stated that he has *always* heard them. When questioned further, he explained that the voices *often* whisper in his ear. Specifically, a week or two after his detention, he heard a voice say, "Don't come back here and cry." During this same time period, he heard a voice tell him that he would "wake up at 72 years," which he took to mean that he would be 72 when released from prison. He added that three days before the presentence interview he heard a voice tell him that on "Tuesday they're going to call you," and on the day of the presentence interview he felt someone breathe on him in the holding cell at the U.S. Marshal's facility in Bridgeport, while he was alone in his cell.

PSR ¶60 (emphasis added).

At the Federal Medical Center in Butner, however, the defendant apparently retracted his claims that he was constantly hearing voices. Contrary to what was represented to the Court shortly before trial, as well as to the Probation Office pre-sentence, the defendant reported that his hearing voices was essentially a singular event that, at best, he believed happened twice. See, e.g., Forensic Evaluation of Jorge Orlando Ardila a/k/a "Angel Rivera" dated July 29, 2005 (hereinafter referred to as "Psych Evaluation") at 8:

> He reported no history of psychotic symptoms . . . except for possible hallucinations. Regarding this, Mr. Ardila explained that he has considered hearing voices to be a life changing experience, "Like a sign I needed to change my life and seek God more." He stated hearing an unfamiliar voice say "At 72 I'll come for you," which he thinks may mean this will be the age of his death or when he will get out of prison.

4

He denied this being the voice of God but indicated it was an audible voice others could not hear. He has found *the experience* to be somewhat "comforting" and has helped "guiding me to live." He was not certain, but did not believe it was his own internal thoughts or voice. *He believes he first experienced this approximately one year before his arrest, and most recently eight months ago. He has not heard it since. He described hearing the voice infrequently, and it only lasted momentarily.*

(emphasis added); see also id. at 8 ("During interviews, Mr. Ardila continued to deny experiencing any distress or symptoms of depression, anxiety, or psychosis. His mental status remained the same as when he first arrived. *He continued to deny hearing voices or having any unusual experiences.*") (emphasis added).

The evaluators concluded that, "[b]ased on all of the available information, it does not appear Mr. Ardila suffers from a mental illness." See Psych Evaluation at 16. In addition, any "memory deficits were generally mild and could be consistent with normal aging or pre-existing weaknesses." Id. at 15. Significantly, the report also concluded:

Given his previous reports of hearing voices, consideration was made as to whether Mr. Ardila might suffer from a psychotic disorder. However, the voices he reported are not at all consistent with a psychotic disorder (functional or organic), neither in content, onset, or duration. Mr. Ardila also has never exhibited or reported other symptoms that would suggest he has a psychotic disorder or another mental illness. It appears this may have simply been a religious experience he had several months ago, which was brief in nature and has not occurred since. Or perhaps the voice he heard and feeling someone breath [sic] on him was a transient hallucinatory experience during the onset and awakening of sleep (i.e., hypnopompic and hypnagogic hallucinations) that is experience by normal individuals. Regardless, this has not been an ongoing experience or something that would suggest a mental disorder.

Id. at 16-17.

The defendant sought to delay his trial by relying on claims of mental defects that were manifesting themselves in the form of his constantly hearing voices and experiencing memory deficits; and he renewed those claims during the presentence interview with the Probation

Officer, which resulted in a delay of his sentencing and his referral to Butner for a psych evaluation. PSR ¶¶ 60, 61. At Butner, the defendant backed off those claims, expressly denied that they happened more than once or twice, and indeed indicated that he found the experience "comforting." The evaluators confirmed that the defendant does not suffer from any mental illness; does not have any significant memory defects; and rejected his "previous reports of hearing voices." Because the defendant sought to delay his trial on this basis and his sentencing was delayed on similar claims, there is ample support in the record for the PSR, which was prepared before the defendant was examined, to award the defendant an additional two (2) level adjustment for obstruction of justice. Thus, notwithstanding that the Guidelines imprisonment range is already at lifetime imprisonment, the government respectfully requests that the sentencing court factor into its sentence the fact that the defendant attempted to obstruct justice in connection with the instant offense, and as a factor in denying the defendant's requests that the Court depart from the Guidelines, and/or impose a non Guidelines sentence.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


ALEX V. HERNANDEZ
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NUMBER ct08345


STEPHEN B. REYNOLDS
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT19105
UNITED STATES ATTORNEY'S OFFICE
915 LAFAYETTE BOULEVARD
BRIDGEPORT, CT 06604
(203) 696-3000
(203) 579-5575 (fax)
Stephen.Reynolds@usdoj.gov

## **CERTIFICATE OF SERVICE**

_____This is to certify that on October 25, 2005, a copy of the foregoing was faxed and mailed,

postage prepaid, to the defendant's attorney of record:


     Francis O'Reilly, Esq.
     O'Reilly and Shaw
     2 Sherman Court
     Fairfield, CT 06430

     This is also to certify that a courtesy copy of the foregoing was hand-delivered on

October 25, 2005 to:

     The Hon. Alan H. Nevas
     Senior United States District Judge
     United States Courthouse
     915 Lafayette Boulevard
     Bridgeport, Connecticut 06604

     Raymond Lopez
     Senior U.S. Probation Officer
     United States Probation Office
     915 Lafayette Boulevard
     Bridgeport, CT 06604


                        _____
                        STEPHEN B. REYNOLDS
                        ASSISTANT U.S. ATTORNEY